IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL A. CANTRELL, W. PATRICK CANTRELL, BARBARA NOWOTNY, AND CANTRELL & CANTRELL, PLLC | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| BRIGGS & VESELKA CO., STEVE AWALT, KEVIN CHESSER, SHEILA ENRIQUEZ, JOHN FLATOWICZ, LAURA FREUDENBERGER, ANDY KUNTZ, LIEN LE, KEVIN LOVINS, BOB MCDONALD, MERESA MORGAN, DAVID PHELPS, JASON SANDERS, MARK SCHAAF, TERRY SHERRILL, GARY TROCHTA, CHARLIE WELLER, BRENDA WHITE, JIM WHITE, AND XIN XIN | § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____ |
| Defendants. | § § | |

## DEFENDANTS' NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to 28 U.S.C. §§ 1331, 1340, 1441, and 1446, Briggs & Veselka Co. ("B&V"), Steve Awalt, Kevin Chesser, Sheila Enriquez, John Flatowicz, Laura Freudenberger, Andy Kuntz, Lien Le, Kevin Lovins, Bob McDonald, Meresa Morgan, David Phelps, Jason Sanders, Mark Schaaf, Terry Sherrill, Gary Trochta, Charlie Weller, Brenda White, Jim White and Xin Xin (collectively "Defendants"), file this Notice of Removal, hereby removing this case from the 125th Judicial District Court of Harris County, Texas (the "State Court Action") to the United States District Court for the Southern District of Texas, Houston Division. In support of this Notice of Removal, Defendants state as follows:

46186573

1

**I.      PROCEDURAL HISTORY**

1.     This action was originally filed by Plaintiffs Carol A. Cantrell ("Carol Cantrell"), W. Patrick Cantrell ("Patrick Cantrell"), Barbara Nowotny, and Cantrell & Cantrell, PLLC ("Plaintiffs") on January 10, 2014, in the 125th Judicial District Court of Harris County, Texas and assigned Cause No. 2014-01189. Plaintiffs' state court petition alleges causes of actions for breach of a settlement agreement, for declaratory judgment, breach of contract, quantum meruit, violation of the Texas Payday Act, conspiracy and claims for statutory attorneys' fees and costs.

2.     Gary Trochta was served with Plaintiffs' state court petition on February 6, 2014, and all the other Defendants were served with Plaintiffs' state court petition on January 30, 2014.

3.     On February 20, 2014, Defendants filed an original answer.

4.     No motions or other proceedings in this case are pending in the State Court.

**II.     FACTUAL BACKGROUND**

5.     This action arises from Plaintiffs' claim that Defendants breached a purported settlement agreement of two other lawsuits filed by Carol Cantrell and Patrick Cantrell against B&V, both of which remain pending (the "Earlier Lawsuits"). Ex. B, pp. 2-3, ¶¶ 28, 42-43. Plaintiffs seek in the alternative to assert the claims set forth in the Earlier Lawsuits against B&V.

6.     Carol Cantrell and Patrick Cantrell (the "Cantrells"), both accountants, are former employees, directors and shareholders of B&V, an independent CPA firm in Houston. Ex. B, ¶¶ 29, 38.

7.     When the Cantrells were employed by B&V in 2000, they and seven other employee-shareholders entered into substantially similar employment agreements, each containing a potential deferred compensation benefit (the "Deferred Compensation Plan" or

"Plan"). Ex. B, ¶¶ 30-32, 38. (Plaintiffs state that they attached a copy of the employment agreement to their petition (*id*., ¶ 30), but it was not attached.)

8. In 2007, Patrick Cantrell resigned from B&V. Ex. B, ¶ 40. At that time, B&V determined that he qualified for benefits under the Deferred Compensation Plan, calculated his benefit to be paid out during the Pay-Out Period (as defined in the Plan), and started paying Patrick Cantrell his benefit (in quarterly installments during the Pay-Out Period). Ex. B, ¶ 41.

9. On January 13, 2012, B&V terminated Carol Cantrell "With Cause" (as defined in the Plan) for violating the terms of her employment agreement and informed her that she was not eligible for benefits under the Plan. *Cantrell v. Briggs & Veselka Co*., 728 F.3d 444, 448 (5th Cir. 2013), petition for cert. filed, 82 U.S.L.W. 3456 (U.S. Jan. 13, 2014) (No. 13-824). B&V subsequently determined that Patrick Cantrell had forfeited his right to benefits under the Plan and gave Patrick Cantrell notice that the payments would cease. Ex. B, ¶ 41. (Plaintiffs state that they attached a copy of the January 13, 2012 letter to their petition (*id*., ¶ 35), but it was not attached.)

10. The Cantrells filed the Earlier Lawsuits seeking benefits under the Plan alleging breach of contract theories and damages for state statutory violations. Ex. B, p. 3 n.1; *see also Cantrell*, 728 F.3d at 448. The Earlier Lawsuits named B&V as the sole defendant; the other Defendants herein were not sued. *Id.* B&V removed the Earlier Lawsuits on the ground that the Deferred Compensation Plan constitutes a "plan" within the meaning of ERISA; the Earlier Lawsuits were consolidated under Case No. 4:12-cv-00244. *See Cantrell*, 728 F.3d at 448.

11. The Cantrells filed motions to remand the Earlier Lawsuits, which were denied. The Cantrells and B&V thereafter filed a joint motion requesting the district court to certify its order denying remand, which was granted. *Id.* On August 27, 2013, a divided panel of the Fifth

Circuit determined that the Plan is not an employee benefit plan within the meaning of ERISA and ordered the cases remanded. *Id.* at 452-53. On January 21, 2014, the cases were remanded to State Court. *See* docket sheet for Case No. 12-244.

12. On December 9, 2013, Carol Cantrell and certain representatives of B&V, including John Flatowicz, met to discuss potential terms for settling the Earlier Lawsuits. The parties outlined terms for settlement (the "Alleged Contract"), which included certain payments by B&V to the Cantrells and, as discussed below, that B&V would not issue an Internal Revenue Service ("IRS") Form W-2, Wage and Tax Statement ("Form W-2"), with respect to those payments, *i.e.*, stating "(3) No W-2 issued." (The Alleged Contract is referred to in Plaintiffs' state court petition but it was not attached. While the parties have exchanged drafts of a settlement agreement based on the Alleged Contract, no definitive agreement has been executed.[1] It is Defendants' position that the Alleged Contract is not enforceable.)

13. On January 10, 2014, Plaintiffs filed this lawsuit. Plaintiffs' first cause of action is for breach of the Alleged Contract. Importantly, they seek specific performance, thereby necessarily seeking that B&V be restrained from issuing a Form W-2 to the Cantrells. Ex. B, ¶ 43.

---

[1] Local Rule 81 strictly prohibits the removing party from attaching documents to the Notice of Removal beyond those stated in the rule. In the event that Plaintiffs file a motion to remand, Defendants reserve to right provide the Court with documents and additional legal authorities that confirm federal question jurisdiction. *Eggert v. Britton*, 223 F. App'x 394, 397-98 (5th Cir. 2007) (per curiam) (noting that in "limited circumstances," courts may permissibly look at documents outside the complaint that "clarify that a plaintiff's state law claim is one that would be preempted by federal law"; the other paper must "clarify the federal nature of an existing claim," and "not relate[] to a putative claim *which has not been pled*") (citation omitted); *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) (considering "background information" included in petition for removal and supporting affidavits in determining whether defendant established subject matter jurisdiction).

14. On January 13, 2014, B&V filed a Petition for a Writ of Certiorari with the Supreme Court of the United States to review the judgment of the United States Court of Appeals. The petition is currently pending under Case No. 13-824.

### III.   BASIS FOR REMOVAL: FEDERAL QUESTION JURISDICTION

15. A federal court has subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States" and over "any civil action arising under any Act of Congress providing for internal revenue . . . ." 28 U.S.C. §§ 1331, 1340. Removal based on federal question jurisdiction is proper when (1) the basis for federal question jurisdiction appears on the face of the complaint, (2) a state law cause of action is "completely preempted", or (3) the state law claim raises a substantial question of federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9, 22-24 (1983); *Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170 (5th Cir. 2012); *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

16. The Court has federal question jurisdiction here because Plaintiffs' request for specific performance of the Alleged Contract is completely preempted under the Tax Anti-Injunction Act, 26 U.S.C. § 7421. In similar cases, where employees have sought to bypass the Internal Revenue Code's exclusive refund procedure or challenge the Internal Revenue Code's collection process, as discussed below, courts have found federal jurisdiction exists.

17. Alternatively, the Court has federal question jurisdiction because Plaintiffs' request for specific performance of the Alleged Contract raises a substantial federal question; Plaintiffs' State Court Action challenges the information reporting and withholding provisions of 26 U.S.C. §§ 3402 and 6041.

A. **By Seeking Specific Performance of the Alleged Contract, Which If Enforced, Would Prohibit B&V from Issuing a Form W-2, Plaintiffs' State Law Claims Are Completely Preempted by the Tax Anti-Injunction Act**

18. The "complete pre-emption" doctrine is an "'independent corollary'" to the "well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 22). Under the "complete pre-emption" doctrine, the pre-emptive force of a statute "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393. "[I]n short, [there is] no such thing as a state-law claim" when the "complete pre-emption" doctrine applies. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003).

19. The Fifth Circuit has explained that "the Internal Revenue Code provides the *exclusive remedy* [under 26 U.S.C. § 7422] for the erroneous or illegal collection of taxes: The taxpayer may file an administrative claim for a refund with the IRS. If the IRS does not return the erroneously or illegally collected tax, the taxpayer may then resort to the courts[, and] . . . the proper defendant in such a suit is the United States, not [the party that withheld the tax]." *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200, 1204 (5th Cir. 1997) (emphasis added). This "*exclusive remedy*" therefore "preempts . . . state-law claims against [the party that collected the tax]." *Id*. The Fifth Circuit further noted that taxpayers cannot "bypass the normal administrative tax refund process" by seeking common-law damages. To allow such exceptions "would open Pandora's box." *Id*. at n.9.

20. Just as 26 U.S.C. § 7422 preempts state law claims to prevent taxpayers from "bypassing" the exclusive refund procedures in the Internal Revenue Code by seeking common-

law damages with respect to previously withheld taxes, the Tax Anti-Injunction Act "prevent[s] taxpayers from sidestepping the administrative [refund] procedures" by "prohibit[ing] any suit in any court by any person for the purpose of restraining the assessment or collection of any tax [(*i.e.*, restraining taxes to be withheld)]." *See* Bittker & Lokken, Federal Taxation of Income, Estates, and Gifts, ¶ 115.9.1. The Supreme Court has explained that the principal purpose of the Tax Anti-Injunction Act is to protect the government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference, '*and to require that the legal right to the disputed sums be determined in a suit for refund*.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736, (1974) (emphasis added) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). Accordingly, the Tax Anti-Injunction Act works in tandem with the refund procedures in the Internal Revenue Code to prevent taxpayers from seeking to restrain the collection of taxes on the frontend, and therefore, similarly preempts any state law claims to restrain the collection of taxes without going through the Internal Revenue Code's "exclusive" refund procedures.[2]

21.  In keeping with its protective purposes, the Fifth Circuit has interpreted the Tax Anti-Injunction Act broadly: "this ban against judicial interference is applicable not only to the assessment or collection itself, but is equally applicable to *activities which are intended to or may culminate in the assessment or collection of taxes*." *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.) (emphasis added) (quoting *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976)), *modified on other grounds*, 646 F.2d 223 (5th Cir. 1981); *accord Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir. 1982). More specifically, the Fifth Circuit

---

[2] Here, Plaintiffs request for specific performance is tantamount to a request for injunctive relief. *See South Plains Switching, Ltd. v. BNSF Ry.*, 255 S.W.3d 690, 703 (Tex. App.–Amarillo 2008, pet. denied) ("In this case, appellant's quest for specific performance, in its essence, was one seeking a mandatory injunction").

has explained that the Tax Anti-Injunction Act applies to "the information gathering process of the [IRS]." *Kemlon*, 638 F.2d at 1320.

22. As noted above, the Alleged Contract for which Plaintiffs seek specific performance includes a term that reads "No W-2 issued." Plaintiffs have asserted that this phrase means that B&V is prohibited from issuing Forms W-2 to the Cantrells with respect to any payments to be made under the Alleged Contract because in their view, the payments are not for "wages." Therefore, Plaintiffs seek in their State Court Action to have the court restrain B&V from issuing Forms W-2 to the Cantrells.

23. Plaintiffs are incorrect: Any settlement payments to be made to Plaintiffs under the Alleged Contract will be "wages" that B&V is required to report to the Cantrells and the IRS on Forms W-2 because such payments stem from the employer-employee relationship, specifically the Deferred Compensation Plan. *See Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1259 (9th Cir. 2005) (settlement payments are "wages" when the plaintiff's "claims stem from his employer-employee relationship"); *Alexander v. Internal Revenue Serv.*, 72 F.3d 938, 942 (1st Cir. 1995) (the test for purposes of determining the character of a settlement payment for tax purposes "is not whether the action was one in tort or contract but rather the question to be asked is 'In lieu of what were the damages awarded?'") (citation omitted); *see also* 26 C.F.R. §§ 31.3121(a)-1(i), 31.3306(b)-1(i), 31.3401(a)-1(a)(5), & 1.6041-2(a)(1).

24. The Forms W-2 will report to the IRS certain information, including the amount of "wages" paid to the Cantrells and the amount B&V was required to withhold from such "wages" and remit to the IRS. 26 U.S.C. §§ 3403, 6041, 6051; 26 C.F.R. § 31.6302-1(a). Accordingly, issuing Form W-2s to the Cantrells is clearly within the "information gathering process" of the IRS, and therefore, part of the "collection" process covered by the Tax Anti-

Injunction Act. *See Winkler v. United States*, 230 F.2d 766, 777 (1st Cir. 1956) (Magruder, C.J., concurring) ("Indeed, 'information' returns of various types are demanded in some cases from persons who have merely made payments to others, as an aid in determining the tax liability of the recipients. . . . All of these reporting requirements would seem to have a reasonable relation to the collection of taxes imposed by the Internal Revenue Code.); *In re I.R.S. Summons to Hall*, No. LR-C-90-221, 1990 WL 127105, at *5 (E.D. Ark. July 31, 1990) ("Whatever other purposes the reporting requirement[s] . . . may serve, there is indisputably one purpose which is related to legitimate collection concerns.").

25. Moreover, a judgment ordering specific performance, which operates as an injunction preventing B&V from issuing Forms W-2 to the Cantrells, would effectively restrain B&V from withholding applicable taxes from the payments as well since the payment of "wages" (as defined in 26 U.S.C. § 3401(a)) triggers both the obligation to issue Forms W-2 under 26 U.S.C. § 6041 and an obligation to deduct and withhold tax with respect to such "wages" under 26 U.S.C. § 3402(a)(1), which B&V is then required remit to the IRS under 26 U.S.C. § 3403. As such, the Internal Revenue Code has an elaborate scheme for the collection, reporting, and payment of taxes to the IRS, and restraining any one of those activities necessary impedes the government's "need to assess and collect taxes as expeditiously as possible . . . ." *Bob Jones Univ.*, 416 U.S. at 736, 738 (holding that the Tax Anti-Injunction Act applied because there was "little doubt that a primary purpose of this lawsuit is to prevent the [IRS] from assessing and collecting income taxes from [the university]").[3] Accordingly, to the extent the

---

[3] The Supreme Court also found the Tax Anti-Inunction Act to be broad enough to prohibit the university from seeking to restrain the collection of taxes from its donors – "to force the [IRS] to continue to provide advance assurance to those donors that contributions to [the university] will be recognized as tax deductible, thereby reducing their tax liability." *Bob Jones Univ.*, 416 U.S. at 739.

Cantrells disagree that Forms W-2 are required to be issued or that withholding is required by B&V and seek specific performance of a term of the Alleged Contract to prohibit B&V from taking such actions, the Tax Anti-Injunction Act completely preempts such relief and requires that the Cantrells comply with the exclusive refund procedure provided by the Internal Revenue Code by seeking a refund from the IRS; *i.e.*, the Cantrells cannot "bypass" or "sidestep" their "exclusive remedy" provided in the Internal Revenue Code by restraining B&V from issuing Forms W-2 or withholding taxes.

26. In sum, removal here is proper under the "complete-preemption" doctrine because Plaintiffs, by seeking a judgment ordering specific performance of the Alleged Contract, seek to restrain the collection of taxes which is completely preempted by the Tax Anti-Injunction Act. 28 U.S.C. § 1441(a).

### B. By Seeking Specific Performance of the Alleged Contract, Plaintiffs Raise a Substantial Federal Question by Challenging the Internal Revenue Code's Reporting and Withholding Provisions

27. The Supreme Court has explained that a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law. *Franchise Tax Bd. of Cal.*, 463 U.S. at 9. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). In the Fifth Circuit, federal question jurisdiction will be found where (1) "'resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial

responsibilities.'" *Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170 (5th Cir. 2012) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) and citing *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312)). Here, all four criteria are met for at least the following reasons:

28. First, it would be impossible to determine whether B&V breached the Alleged Contract without deciding whether issuing Forms W-2 and withholding taxes were governed by 26 U.S.C. § 6041 and 26 U.S.C. § 3402(a)(1), respectively. In *Bright v. Bechtel Petroleum, Inc.*, an employee sued his employer in state court for breach of contract by paying him less than the contract required. 780 F.2d 766, 768 (9th Cir. 1986). The employer removed the case to federal district court. *Id.* The Ninth Circuit held that removal was proper because despite "artfully pleading" his action as a breach of contract, the employee was in fact challenging federal income tax withholding laws and regulations. *Id.* at 769-70; *see also Chandler v. Perini Power Constructors, Inc.*, 520 F. Supp. 1152, 1154 n.3 (D.N.H. 1981) (upholding removal of a case alleging conversion on the ground that the suit actually challenged employer's withholding of federal income tax). Similarly, the Plaintiffs' state law claims requires resolving a federal issue as to whether issuing Forms W-2 and withholding tax are required under the Internal Revenue Code regarding the payments due under the Alleged Contract.

29. Second, whether Forms W-2 and withholding of tax are required under the Internal Revenue Code is actually disputed. Indeed, Plaintiffs are seeking specific performance under the Alleged Contract to restrain B&V from issuing Forms W-2 and withholding tax, which B&V asserts is required under the Internal Revenue Code.

30. Third, whether B&V is required to issue Forms W-2 and withhold tax under the Internal Revenue Code with respect to payments under the Alleged Contract raises a substantial

federal issue. The Supreme Court has held that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Grable & Sons*, 545 U.S. at 315. Quoting this statement, the Fifth Circuit found removal proper where an employee's state law claims contested the validity of his employer's withholding pursuant to an IRS administrative levy. *Hughes*, 478 F. App'x at 171.

31. Fourth, the Fifth Circuit has explained that "it clearly would not disturb the balance of federal and state judicial power for a federal court to decide questions of federal tax law. Indeed, as the Supreme Court has stated, determinations regarding federal tax provisions 'sensibly belon[g] in a federal court.'" *Id*. (quoting *Grable*, 545 U.S. at 315).

32. Therefore, even in the absence of complete preemption, removal is proper.

33. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

## IV. TIMELINESS OF REMOVAL AND NON-WAIVER OF DEFENSES

34. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) because Defendant Trochta was served with Plaintiffs' Original Petition on February 6, 2014, and the other Defendants were each served with Plaintiffs' Original Petition on January 30, 2014. 28 U.S.C. § 1446(a)(2)(C).

35. By filing this Notice of Removal, Defendants do not waive any defenses that may be available to them (including without limitation any defenses relating to service, process, or jurisdiction, that the Alleged Contract is unenforceable or the existence of a prior pending lawsuit) and does not concede that the allegations in the Petition state a valid claim under applicable law.

## V. PROPRIETY OF REMOVAL TO THIS COURT

36. The 125th Judicial District Court of Harris County, Texas, is located within the Southern District of Texas, Houston Division. Accordingly, under 28 U.S.C. § 1441(a), this action is properly removed to this Court. Defendants further make note that the employment agreements entered into between B&V and each of the Cantrells provides, in Section 7.5 under "Governing Law," that the employment agreement "shall be governed by and construed in accordance with the laws of the State of Texas, and [each of the Cantrells] agrees to subject himself [or herself] to the jurisdiction of the Southern District of Texas."

## VI. ADDITIONAL PROCEDURAL MATTERS

37. All defendants join in this Removal.

38. In compliance with 28 U.S.C. § 1446(a) and Local Rule 81, attached hereto are the following:

(a) All executed process in this case (Exhibit A);

(b) Plaintiffs' Original Petition (Exhibit B);

(c) Defendants' Original Answer (Exhibit C);

(d) the online docket sheet from the State Court Action (Exhibit D);

(e) an Index of Matters Being filed (Exhibit E); and

(f) a List of Counsel and Parties, including addresses, telephone numbers and parties represented (Exhibit F)

39. No orders have been signed by the state judge.

40. Defendants have attached to this Notice of Removal only documents strictly permitted by Southern District of Texas Local Rule 81, and reserve the right to submit, at an appropriate time, factual support, evidence, and affidavits to support the basis for federal jurisdiction, should that become necessary. *See* n.1, *supra*.

41. Upon filing this Notice of Removal, Defendants will provide written notification to Plaintiffs and will file a Notification of Removal, attaching a copy of this Notice of Removal, with the Clerk for the 125th Judicial District Court of Harris County, Texas.

42. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, the undersigned Defendants hereby remove this action from the State Court of Texas, Harris County, to this Honorable Court.  For the foregoing reasons, Defendants pray that the United States District Court for the Southern District of Texas, Houston Division, accepts this Notice of Removal.

Dated: February 28, 2014

Respectfully submitted,

FULBRIGHT & JAWORSKI LLP

 /s/ M. Carter Crow
M. Carter Crow
State Bar No. 05156500
Federal I.D. No. 15408
1301 McKinney, Suite 5100
Houston, TX 77010
Telephone:   (713) 651-5151
Facsimile:    (713) 651-5246

*Attorney-in-Charge for Defendants*

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was e-filed via the Court's PACER system and served on the following counsel of record via email and Certified Mail, Return Receipt Requested, on the 28th day of February 2014, at the following addresses:

Mr. Charles Sturm (*csturm@sturmlegal.com*)
STURM LAW PLLC
723 Main Street, Suite 325
Houston, TX 77002
Telephone:     832-447-1300
Facsimile:     832-447-1400
**Co-Counsel for Plaintiffs**

Mr. Michael Lee (*mlee@cbylaw.com*)
COKINOS, BOSIEN & YOUNG
1221 Lamar, 16th Floor
Houston, TX 77010
Telephone:     (713) 535-5500
Facsimile:     (713) 535-5533
**Co-Counsel for Plaintiffs**

>*/s/ M. Carter Crow*
>M. Carter Crow

46186573

15