# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| CAROL A. CANTRELL, *et al.*, | § |
| | § |
| *Plaintiffs*, | § |
| | § |
| v. | § CIVIL ACTION H-14-509 |
| | § |
| BRIGGS & VESELKA CO., *et al.*, | § |
| | § |
| *Defendants*. | § |

**MEMORANDUM OPINION & ORDER OF REMAND**

Pending before the court is plaintiffs Carol Cantrell, Patrick Cantrell, Barbara Nowotny and Cantrell & Cantrell, PLLC's (together, the "plaintiffs") motion to remand. Dkt. 13. Defendants Briggs & Veselka Co. ("B&V"), Steve Awalt, Kevin Chesser, Sheila Enriquez, John Flatowicz, Laura Freudenberger, Andy Kuntz, Lien Le, Kevin Lovins, Bob McDonald, Meresa Morgan, David Phelps, Jason Sanders, Mark Schaaf, Terry Sherrill, Gary Trochta, Charlie Weller, Brenda White, Jim White, Xin Xin, and Fred Curry (together, the "defendants") removed this case to federal court on February 28, 2014 on the basis of federal question jurisdiction. After considering the motion, the responses, and the applicable law, this court concludes that it does not have federal question jurisdiction and the case must be remanded.

**I. BACKGROUND**

Carol Cantrell and Patrick Cantrell (together, the "Cantrells") began working for B&V in December 2000, when they decided to merge their accounting firm Cantrell & Company with B&V's accounting firm. Dkt. 1-2 at 7–11. As compensation for the merger, the Cantrells accepted a deferred compensation agreement with B&V, payable if they stayed with the firm for a minimum number of years. Dkt. 1-2 at 7, 11. The agreement contained many terms, including non-

competition and non-solicitation provisions, and a forfeiture clause if the Cantrells competed with B&V's existing or proposed business during the payout period, or if the Cantrells were terminated with cause. Dkt. 1-2 at 9.

Patrick Cantrell retired from B&V in December 2007. Dkt. 1-2 at 12. Between his retirement and January 2012, B&V honored the deferred compensation agreement and made regular payments to him. *Id.* However, in January 2012, B&V notified Patrick Cantrell that he had forfeited the remainder of his deferred compensation and that B&V would no longer make any payments to him. Dkt. 1-2 at 13–14.

In November 2011, Carol Cantrell announced her intention to retire from B&V in January 2012, and also announced her intention to collect 90% of the deferred compensation agreement, pursuant to the agreement's terms. Dkt. 1-2 at 10. In January 2012, B&V shareholders allegedly removed Carol Cantrell as a director, rejected her retirement and terminated her with cause. *Id.* B&V notified Carol Cantrell that she had been terminated with cause for violating the non-competition and non-solicitation covenants by forming a competing company, a law firm, and soliciting and performing legal services for B&V clients on behalf of her new company. *Id.* Therefore, B&V would not pay Carol Cantrell under deferred compensation agreement. *Id.*

The Cantrells brought a lawsuit against defendants for not honoring the deferred compensation agreement, which resulted in a settlement agreement. Dkt. 13 at 2. The settlement agreement included payments to the Cantrells and a provision that B&V would not issue an IRS Form W-2 ("W-2") to the Cantrells. Dkt. 1 at 4. Defendants then repudiated the settlement agreement. Plaintiffs filed the present suit to enforce the settlement agreement in the 125th District Court of Harris County, Texas. *Id.* Defendants removed the case to this court on February 28, 2014 on the basis of federal question jurisdiction. Dkt. 1 at 5. Defendants claim that removal is proper

because the state law contract claims are completely preempted by the Tax Anti-Injunction Act, and that the enforcement of the settlement agreement involves a substantial federal question because the agreement challenges the Internal Revenue Code's ("IRC") reporting and withholding provisions. Dkt. 1 at 6, 10. Plaintiffs seek remand arguing that federal tax laws do not provide a basis for the doctrine of complete preemption, the defense of ordinary preemption is not a basis for removal, and plaintiff's claims do not raise a "substantial federal question." Dkt. 13 at 1.

## II. LAW

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases involving diversity and an amount in controversy exceeding $75,000. 28 U.S.C. §§ 1331, 1332. Removal of civil actions is governed by 28 U.S.C. § 1441. "[A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court . . . ." *Id.* at § 1441(a). A defendant seeking removal bears the burden of proving federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Because the effect of removal is to deprive the state court of an action properly before it, the removal statute is to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Accident & Indem. Co.,* 491 F.3d 278, 281–82 (5th Cir. 2007).

This case was removed under federal question jurisdiction. Such jurisdiction is most often invoked by plaintiffs pleading a cause of action created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363 (2005). However, "'a defense that

3

raises a federal question is inadequate to confer federal jurisdiction.'" *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229 (1986)). Federal question jurisdiction also encompasses claims that are "recognized under state law [but] turn on questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

Additionally, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim [that] therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425 (1987). The Supreme Court has only found complete preemption in three areas: the usury provisions of the National Bank Act ("NBA"); the Employee Retirement Income Security Act of 1974 ("ERISA"); and the Labor Management Relations Act ("LMRA"). *Vasquez v. Wells Fargo Bank, N.A.*, No. H-11-4086, 2013 U.S. Dist. LEXIS 6208, at *15 (S.D. Tex. Jan. 8, 2013) (Harmon, M.) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8–11, 123 S. Ct. 2058 (2003); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S. Ct. 1542 (1987); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S. Ct. 1235 (1968)). "These statutes are distinctive because they 'provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 15.). Aside from complete preemption, a defense of preemption does not support removal to federal court "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

**III. ANALYSIS**

*A. Complete Preemption*

The settlement agreement included payments to the Cantrells and a provision that B&V would not issue a W-2 to the Cantrells. Dkt. 1 at 4. Defendants argue that the payments made to the Cantrells would have been wages for federal income tax purposes, which requires issuing a W-2 and withholding taxes, regardless of what the settlement agreement says. Dkt. 19 at 5. Because plaintiffs seek specific performance of the agreement, which would restrain B&V from issuing a W-2 to the Cantrells, the agreement is effectively enjoining B&V from collecting taxes in violation of the Tax Anti-Injunction Act. Dkt. 1 at 4, 7. And because the Tax Anti-Injunction Act is implicated, defendants claim that it pre-empts plaintiff's state law claims. *Id*; *see* 26 U.S.C. § 7421.

Defendants support their argument by pointing to Fifth Circuit case law that explains that the IRC provides the exclusive remedy under 26 U.S.C. § 7422 for the erroneous or illegal collection of taxes. *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200, 1204 (1987). Defendants argue that just as § 7422 keeps taxpayers from bypassing the IRC refund process, §7421, the Tax Anti-Injunction Act, prevents taxpayers from bypassing the IRC's collection process. Dkt. 1 at 6–7. They further argue the ban against judicial interference is widely applicable to activities intended to or which may culminate in the assessment or collection of taxes, such as the settlement agreement with the W-2 provision. Dkt. 1 at 7.

Plaintiffs agree that a W-2 is required to be issued for any wages paid, and explain that the payments were not wages, they were simply compensation for the purchase of the Cantrell & Company accounting firm that occurred in 2000. Dkt. 13 at 6, 6 n.4. Plaintiffs argue that its simple claim to enforce the settlement agreement cannot be construed as a challenge to the United States' right or ability to assess and collect taxes. Dkt. 13 at 4. While one provision of the settlement does

5

say "No W-2 issued," plaintiff is not challenging the taxability of the settlement in general and argues the Tax Anti-Injunction Act does not apply. Dkt. 13 at 5. Even if it did apply, any preemption is not "complete preemption" and therefore does not require removal. *Id.*

It is clear that this case falls outside of the NBA, ERISA, and the LMRA, the three areas where the Supreme Court has found complete preemption to exist. Therefore, to find complete preemption in this case, the court "must determine that Congress intended a federal act to provide the exclusive cause of action for the claims at issue to hold that it completely preempts state law claims." *Bernhard*, 523 F.3d at 553 (citing *Beneficial Nat'l Bank*, 539 U.S. at 9 n.5). Plaintiffs simply seek enforcement of a settlement agreement made by the parties, which defendants interpret as an injunction request, prohibited and preempted by the Tax Anti-Injunction Act. The court is not persuaded that this claim to enforce a settlement agreement is a veiled claim to enjoin the collection of taxes. Further, defendants provide no direct or otherwise persuasive authority to support their contention that Congress intended the Tax Anti-Injunction Act to provide the exclusive cause of action for breaches of contract, even when the agreements designate the tax categories of the various agreed-upon obligations.

### B. Substantial Federal Question

Aside from basing a claim on federal law, federal question jurisdiction can exist where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). However, these cases are a "special and small category." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121 (2006).

Defendants argue that "it would be impossible to determine whether B&V breached the 'Alleged Contract' without deciding whether issuing a W-2 and withholding taxes were governed by 26 U.S.C. §6041 and 26 U.S.C. §3402, respectively," and therefore whether they were enforceable in the settlement agreement. Dkt. 1 at 11. Defendants also assert that the federal issue is substantial because the meaning of federal tax law provisions is important, and the federal government has a strong interest in the collection of taxes. Dkt. 19 at 22. Plaintiffs do not dispute the validity or construction of any tax law, and they agree that a W-2 is required to be issued when wages are paid. Instead, plaintiffs seek specific performance of the terms of the settlement agreement, which does not require resolving a federal issue. Dkt. 13 at 6. Plaintiffs also argue that the existence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction, particularly when the federal issue is not dispositive. Dkt. 13 at 7.

A claim for a breach of the settlement agreement should only require a determination as to whether the agreement terms were followed. Given the simplicity of the tax-related term agreed to by the parties—that B&V would not issue a W-2—this should not require interpretation of a tax law provision, but merely the issue of whether a W-2 was issued or not. Therefore, the court is not persuaded that a federal issue must be resolved before the initial state law claim can be resolved. If a breach is found, defendants can defend the breach by arguing that the agreement was never finalized, or the agreement was not enforceable as written because of the W-2 provision. However, defenses do not confer federal question jurisdiction. *Bernhard*, 523 F. 3d at 551.

Even if the plaintiffs' claims required resolution of a federal issue, as defendants suggest, it is still not a substantial determination. This is a case about a contract, and though the contract may include a tax provision, the primary question before the court is whether the contract was breached. Further, whether the specific W-2 provision is enforceable or not, the payment provisions could still

stand without it.  Because the first and third elements set out in *Singh* are not met, the court need not analyze the others.

Contract disputes are regularly decided by state courts.  This court is not persuaded that a dispute about a contract that simply designates that some payments are not wages, meets the narrow class of cases that turn on a question of federal law and require the "experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  Finally, even if the court still had doubts about whether remand was proper, "any doubt . . . *must* be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82 (emphasis added).

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand (Dkt. 13) is GRANTED.  It is therefore ORDERED that this case is REMANDED to the 125th District Court of Harris County, Texas.[1]

Signed at Houston, Texas on December 5, 2014.

_____
Gray H. Miller
United States District Judge

---

[1] Because the court determines that it does not have subject matter jurisdiction to hear this case, all other pending motions in this case, such as the motions for summary judgment, are denied as moot.